1  Allison C. Eckstrom CA Bar No. 217255
   allison.eckstrom@ogletreedeakins.com
2  OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
   Park Tower, Suite 1500
3  695 Town Center Drive
   Costa Mesa, CA 92626
4  Telephone: 714.800.7900
   Facsimile: 714.754.1298
5
   Attorneys for Defendant
6  EMD SERONO, INC.

7

8             UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  MARY ALLEN, *An Individual*          Case No.  **SACV 11-00861 JVS (RNBx)**

12           Plaintiff,                  **DEFENDANT EMD SERONO, INC.'S**
                                         **PETITION AND NOTICE OF**
13        v.                             **REMOVAL UNDER 28 U.S.C. §§ 1332**
                                         **AND 1441(b)**
14  EMD SERONO, INC., a Delaware
    Corporation; BRIAN MILLER, an        Complaint Filed: April 27, 2011
15  individual and resident of           Trial Date:      None Set
    Massachusetts; TIM BARR, an
16  individual and resident of California;

17           Defendants.

18

19

20

21

22

23

24

25

26

27

28

10040462_2.DOC

1   TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT

2   OF CALIFORNIA AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

3        PLEASE TAKE NOTICE THAT Defendant EMD Serono, Inc. ("EMD

4   Serono") hereby removes this action from the Superior Court of the State of

5   California for the County of Orange to the United States District Court for the

6   Central District of California pursuant to 28 U.S.C. §§ 1332 and 1441(b) on the

7   grounds that:  (1) there is complete diversity of citizenship between Plaintiff Mary

8   Allen ("Plaintiff"), a citizen of the State of California, and Defendants EMD Serono,

9   a citizen of the State of Delaware, and Defendant Brian Miller ("Miller"), a citizen of

10  the State of Connecticut; (2) Defendant Timothy Barr ("Barr") is a "sham defendant"

11  and, therefore, his non-diverse citizenship must be disregarded in determining the

12  diversity of citizenship requirement under Section 1332(a)(1); and (3) the amount in

13  controversy exceeds the jurisdictional minimum of $75,000 set forth in Section

14  1332(a).  The foregoing facts were true at the time the Complaint in this matter was

15  filed and remain true as of the date of the filing of this notice of removal.  Removal

16  jurisdiction is therefore appropriate as detailed more fully below:

**I.**

**THE STATE COURT ACTION**

19        1.      On or about April 27, 2011, Plaintiff filed an action against EMD

20  Serono, entitled "MARY ALLEN v. EMD SERONO, INC., BRIAN MILLER and

21  TIM BARR," in Orange County Superior Court, Case Number 30-2011 00470623.

22  A true and correct copy of the Complaint and Civil Case Cover Sheet is attached

23  hereto as Exhibit "1."

24        2.      On May 11, 2011, Plaintiff served EMD Serono's agent for service of

25  process with a copy of the Summons and Complaint.  *See* Exhibit "1."

26        3.      As of the date of this removal, Plaintiff has not yet served Defendants

27  Miller or Barr.

28

10340462_2.DOC

1

4.      Plaintiff alleges the following six (6) causes of action in her Complaint:  (1) discrimination in violation of California's Fair Employment and Housing Act, codified at Government Code Section 12940 *et seq.* ("FEHA"); (2) harassment in violation of FEHA; (3) retaliation in violation of FEHA;[1] (4) failure to prevent discrimination, harassment and/or retaliation in violation of FEHA; (5) intentional infliction of emotional distress (IIED); and (6) breach of the implied covenant of good faith and fair dealing.[2]

## II.

## REMOVAL IS TIMELY

5.      A defendant in a civil action has thirty (30) days from the date it is validly served with a summons and complaint to remove the action to federal court.  28 U.S.C. § 1446(b); *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) (noting that the "thirty-day requirement is triggered by defendant's receipt of an 'initial pleading' that reveals a basis for removal").

6.      Plaintiff served EMD Serono on May 11, 2011.  Therefore, removal is timely, as the action is being removed within 30 days of service.

## III.

## COMPLETE DIVERSITY EXISTS BETWEEN THE PARTIES

7.      This timely Notice is based on complete diversity of the parties.  Plaintiff is a citizen of the State of California and Defendants EMD Serono and Miller are citizens of the States of Delaware and Connecticut, respectively.

---

[1] Although the Complaint fails to specify the statutory or common law basis for Plaintiff's retaliation claim, EMD Serono assumes for removal purposes only that Plaintiff alleges a statutory claim for retaliation under FEHA.

[2] Plaintiff alleges each of the 6 causes of action against EMD Serono.  Plaintiff alleges the foregoing claims against Miller individually, except for the Fourth Cause of Action for failure to prevent discrimination, harassment and retaliation.  Plaintiff also alleges the Second Cause of Action for harassment and Fifth Cause of Action for IIED against Barr individually.

8.      EMD Serono is informed and believes that, at all relevant times, Plaintiff was a citizen of the State of California and was domiciled in the County of Fresno, California.  (See Complaint ¶ 3.)

9.      EMD Serono was, at the time the Complaint was filed, and still is, a corporation formed under the laws of the State of Delaware, with its principal place of business in the State of Massachusetts.  (Declaration of Thomas G. Gunning ("Gunning Decl.") ¶ 3.)

10.     The following high level corporate officers of EMD Serono maintain their offices at the company's corporate headquarters located in Rockland, Massachusetts:  (a) the acting President and Chief Executive Officer; (b) the Chief Financial Officer; (c) the General Counsel; (d) the Vice President, Human Resources; (e) the Chief Compliance Officer; (f) the Chief Commercial Officer; (g) the Chief Medical Officer; (h) the Vice President, US Communications; (i) the Vice President, Business Development; and (j) the Vice President, Strategy & Management Process.  (*Id.* at ¶ 4.)

11.     EMD Serono performs the vast majority of its executive and administrative functions at its corporate headquarters located in Rockland, Massachusetts, including, but not limited to, the following:  (1) matters relating to the financing of EMD Serono's operations; (2) directing general business strategy and operation; (3) compliance with state and federal laws and legal services associated with such matters; and (4) the size and composition of EMD Serono's workforce.  (*Id.* at ¶ 5.)  The books and records relating to these matters are also maintained at the corporate headquarters.  (*Id.*)  EMD Serono thus has its principal place of business in Massachusetts.

12.     Accordingly, EMD Serono is not a citizen of the State of California.

13.     Plaintiff admits in her Complaint that Miller is not a citizen of California.  (Complaint, ¶ 5.)  Although Plaintiff's Complaint alleges that Miller is a citizen of the State of Massachusetts, EMD Serono's employment records reflect

that, at all relevant times, Miller was (and still is) a citizen of the State of Connecticut.  (Declaration of Katy Glover ("Glover Decl."), ¶ 3.)

14.     This court has jurisdiction over this action based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441(a) because Plaintiff is a citizen of California and Defendants EMD Serono and Miller are not citizens of California.  Therefore, complete diversity among the parties now exists.

## IV.

## BARR IS A "SHAM DEFENDANT" WHOSE NON-DIVERSE CITIZENSHIP MUST BE DISREGARDED FOR REMOVAL PURPOSES

15.     Although the face of Plaintiff's Complaint names Barr as an individual defendant, the allegations against Barr clearly demonstrate that he is a "sham defendant," who Plaintiff fraudulently joined in this action merely to prevent diversity jurisdiction.

16.     A non-diverse defendant who has been fraudulently joined cannot serve to defeat removal based on diversity between the proper parties.  *Morris v. Princess Cruises, Inc.* 236 F.3d 1061, 1067 (9th Cir. 2001).  "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent."  *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *see also Zogbi v. Federated Dept. Store*, 767 F. Supp. 1037, 1041 (C.D. Cal. 1991).  Such fraudulently joined "sham defendants" are disregarded for purposes of subject matter jurisdiction, and the Court's exercise of diversity jurisdiction is proper.  *McCabe*, 811 F.2d at 1339 (individual defendants in suit for, *inter alia*, wrongful termination and IIED were fraudulently joined and did not prevent removal); *Zogbi*, 767 F. Supp. at 1041 (individual employees were sham defendants whose presence did not destroy diversity).

17.     Here, Plaintiff's Complaint alleges causes of action against Barr for harassment and IIED.  However, Plaintiff's Complaint, on its face, fails to allege

1   any facts to sufficiently state a claim against Barr for harassment or IIED.  In fact,

2   only 7 of the 88 Paragraphs contained in the entire Complaint make any reference

3   to Barr, and none of these references include any specific factual allegations of

4   unlawful conduct.

5        18.    The following excerpts from the Complaint are the ***only*** references to

6   Barr and are wholly insufficient to state a claim for harassment or IIED against

7   Barr:

8   •   "Defendant Timothy Barr (Barr) is . . . an individual and resident of

9       Orange, County California." (Complaint, ¶ 6.)

10  •   "Miller continuously degraded Plaintiff by . . . sharing information about

11      Plaintiff with Barr and others." (*Id.* at ¶ 26.)

12  •   "Miller insisted on taking Dr. Potter out for a 'boys night on the town

13      . . . .' Someone who was comfortable with this type of business was

14      Defendant Tim Barr." (*Id.* at ¶ 27.)

15  •   "Barr was always Miller's right hand man. . . . Barr would regularly

16      make fun of Plaintiff in order to elevate his status with Miller.  Barr was

17      a member of the Miller team and very much a participant in Miller's

18      social activities." (*Id.* at ¶ 28.)

19  •   "Tim Barr was made Strategic Account Manager in the southern

20      California area.  Tim Barr was a great ally of Miller's as they had similar

21      interests.  Each enjoyed the social aspects of EMD Serono and took full

22      advantage of the social opportunities presented them." (*Id.* at ¶ 31.)

23  •   "Instead, Miller focused on Tim Barr as Barr was more interested in the

24      social aspects of EMD Serono similar to Miller.  Barr also was now in

25      charge of the territories that had the most promise in California." (*Id.* at

26      ¶ 32.)

27

28

1     • "In December, Plaintiff began seeing a therapist for treatment of the

2          unbearable stress she had been put under by Miller and Barr's

3          underhanded tactics and abuse." (*Id.* at ¶ 45.)

4     19.     The absence of any meaningful allegations against Barr renders him a

5   "sham defendant" whose non-diverse citizenship must be disregarded for purposes

6   of removal jurisdiction. *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1136-37

7   (S.D. Cal. 1998) (dismissing claims against non-diverse individual defendants

8   where defendants were named in complaint caption and headings but "no material

9   allegations against these defendants are made").

10  **A.     Plaintiff Cannot State a Harassment Claim Against Barr.**

11    20.     Plaintiff cannot state a cause of action for harassment against Barr.

12  To state a claim for harassment under FEHA, Plaintiff must plead, *inter alia*,

13  "severe or pervasive" conduct by the defendant. *Lyle v. Warner Bros. Television*

14  *Prods.*, 38 Cal. 4th 264, 279 (2006); *Fisher v. San Pedro Peninsula Hospital,* 213

15  Cal. App.3d 590, 608 (1989). Plaintiff's Complaint contains not a single ***factual***

16  allegation regarding conduct by Barr that could conceivably be deemed sufficiently

17  "severe and pervasive" for purposes of a harassment claim under FEHA. At most,

18  Plaintiff alleges that Barr "would regularly make fun of Plaintiff in order to elevate

19  his status with Miller." (Complaint, ¶ 28.) Plaintiff's other allegations regarding

20  Barr merely refer to his working relationship with Miller or otherwise fail to link

21  any unlawful conduct by Barr with Plaintiff.

22    21.     Even assuming the truth of Plaintiff's allegations, it is well-settled law

23  in California that trivial, occasional, isolated, and sporadic comments do not

24  constitute "severe or pervasive" conduct for purposes of harassment as a matter of

25  law. *Fisher,* 213 Cal. App.3d at 609; *see also Nichols v. Azteca Rest. Enterprises,*

26  *Inc.,* 256 F.3d 864, 872 (9th Cir. 2001).

27    22.     In fact, the courts routinely have held that conduct, which is ***far more***

28  ***egregious*** than Plaintiff's allegations here, is insufficiently "severe and pervasive"

1  to support a claim for harassment. *See, e.g., Ramirez v. Salvation Army*, 2008 U.S.

2  Dist. LEXIS 17480, *63-64, 67-68 (N.D. Cal. March 6, 2008) (concluding that a

3  supervisor who yelled comments like "young people work faster!," "I need a more

4  energetic staff!," and "[you're] getting old" in the plaintiffs' presence and in front

5  of customers was "insufficiently severe and pervasive so as to create an abusive

6  working environment"); *Stevens v. County of San Mateo*, 2006 U.S. Dist. LEXIS

7  12498, *14-15 (N.D. Cal. March 6, 2006) (supervisor's comments that the plaintiff

8  was "an old lion and in my country we kill old lions" and that he was an "old

9  barking dog" and a "stupid old man making up rules" were "neither sufficiently

10  severe nor pervasive to constitute an actionable hostile work environment claim");

11  *see also Kortan v. California Youth Authority*, 217 F.3d 1104, 1110-1111 (9th Cir.

12  2000) (concluding that a supervisor's offensive comments, such as using the terms

13  "Regina," "Madonna," and "castrating bitch" to describe plaintiffs, were not

14  sufficiently frequent, severe, or abusive to interfere unreasonably with the

15  plaintiff's employment); *Etter v. Veriflo Corp.*, 67 Cal. App. 4th 457, 463 (1998)

16  (calling the African-American plaintiff "boy" on a daily basis, "Buckwheat"

17  between five and ten times, "Aunt Jemima" twice on one day, "Stymie" once or

18  twice, made jokes about black girls, commented on the O.J. Simpson trial, and

19  declaring dislike of traveling to an area because of the violence by blacks was not

20  severe or pervasive).

21      23.  Here, Plaintiff's entire complaint contains **only one conclusory, non-**

22  **specific allegation** against Barr – *i.e.*, a generic allegation that he "would regularly

23  make fun of Plaintiff" – which cannot possibly constitute "severe or pervasive"

24  conduct for purposes of harassment under FEHA.

25  **B.   Plaintiff Cannot State an IIED Claim Against Barr.**

26      24.  Plaintiff cannot state a cause of action for IIED against Barr. To state

27  a claim for IIED, a plaintiff must allege, *inter alia*, "extreme and outrageous

28  conduct by defendants with the intent of causing emotional distress." *Conley v.*

1 | *Roman Catholic Archbishop of S.F.*, 85 Cal. App. 4th 1126, 1133 (2000).

2 | California case law makes clear that stray workplace comments cannot constitute

3 | IIED as a matter of law. *Shoemaker v. Myers* 52 Cal. 3d 1, 25 (1990).

4 |     25.    Here, Plaintiff's Complaint contains no allegations regarding Barr that

5 | could possibly be deemed "extreme and outrageous" for purposes of an IIED

6 | claim. Rather, Plaintiff merely alleges that Barr "would regularly make fun of

7 | Plaintiff in order to elevate his status with Miller." (Complaint, ¶ 28.) Plaintiff's

8 | Complaint, on its face, fails to state a claim for IIED against Barr.

9 |     26.    Because Plaintiff's Complaint fails to state claims against Barr for

10 | harassment and IIED, Barr is a "sham defendant" whose residency must be

11 | disregarded for purposes of removal. For these reasons, complete diversity exists

12 | between the parties.

**V.**

**THE JURISDICTIONAL MINIMUM IS EASILY MET**

**ON THE FACE OF THE COMPLAINT**

16 |     27.    Pursuant to Section 1332, removal jurisdiction is proper where the

17 | complaint, on its face, places at least $75,000 in controversy. Here, assuming

18 | Plaintiff's allegations to be true, the Complaint easily meets the requisite $75,000

19 | amount in controversy for removal jurisdiction under Section 1332. EMD Serono

20 | discusses the allegations in Plaintiff's Complaint solely to demonstrate that the

21 | amount in controversy in this matter exceeds $75,000. *Gaus v. Miles, Inc.*, 980

22 | F.2d 564, 566 (9th Cir. 1992) (noting that a Court may, for removal purposes, look

23 | to the pleadings for underlying facts establishing the jurisdictional limit). In doing

24 | so, however, EMD Serono does not admit that Plaintiff is entitled to these damages

25 | or that Plaintiff will be able to recover on any of her theories.

26 | **A.**    **Lost Wages and Benefits**

27 |     28.    Plaintiff's Complaint alleges that, as a direct and proximate result of

28 | EMD Serono's conduct, she has suffered "loss of earnings and other employment

benefits." (Complaint ¶¶ 59, 67, 73, 77, 83, 87.)  Based on Plaintiff's salary and other benefits available to her during her employment, it is reasonable to expect that Plaintiff's damages for lost wages and benefits, alone, will exceed $75,000 by the time this case goes to trial. *See Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1032 (N.D. Cal. 2002).

29.     At the time of her termination in April 2010, Plaintiff's annual salary was $136,009.  (Glover Decl., ¶ 4.)  Plaintiff was also entitled to other benefits, including performance bonuses, health benefits, and 401(k).  *Id.*

30.     As alleged in the Complaint, EMD Serono terminated Plaintiff on or about April 27, 2010.  (Complaint, ¶ 54.)  Consequently, as of the date of this removal (*i.e.*, June 9, 2011), Plaintiff's potential damages for lost wages and benefits exceeds $150,000. *See, e.g., Rivera v. Costco Wholesale Corp.*, 2008 U.S. Dist. LEXIS 58610, at *1 (N.D. Cal. July. 11, 2008) (calculating lost wages in wrongful termination case from date of termination to removal to establish the amount of controversy at the time of removal).

31.     Therefore, Plaintiff's request for lost wages and benefits, alone, easily satisfies the requisite $75,000 amount in controversy for removal jurisdiction.

**B.     Emotional Distress Damages**

32.     Plaintiff's Complaint also asserts that, as a result of EMD Serono's conduct, she suffered "pain and suffering; anxiety; embarrassment; humiliation; loss of self-esteem; depression; severe mental anguish and emotional distress." (Complaint, ¶¶ 59, 67, 73, 77, 83, 87.)

33.     A court may consider that emotional distress damages "are potentially substantial." *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995).  Such damages are also properly considered when calculating the amount in controversy even if emotional distress damages were not clearly pled. *Id.* at 450.

34.     Additionally, to establish the amount of emotional distress damages in controversy, a defendant may introduce evidence of jury verdicts in cases

10340462_2.DOC

1   involving analogous facts. *See Simmons*, 209 F. Supp. 2d at 1033; *Faulkner v.*
2   *Astro-Med, Inc.*, 1999 U.S. Dist. LEXIS 15801, *4 (N.D. Cal. 1999). In
3   California, courts have awarded substantial damages for emotional distress in
4   employment cases. *See, e.g., Kolas v. Access Business Group LLC*, 2008 WL
5   496470 (Los Angeles Super. Ct.) (awarding plaintiff $200,000 in emotional
6   distress damages for wrongful termination due to his age); *Lopez v. Bimbo*
7   *Bakeries USA Inc.*, 2007 WL 4339112 (San Francisco Super. Ct.) (awarding the
8   plaintiff $122,000 in emotional distress damages for wrongful termination, failure
9   to prevent discrimination and failure to accommodate a pregnant employee).[3]

10          35.     Therefore, if Plaintiff were to prevail at trial, she could be awarded a
11   substantial amount of emotional distress damages, in addition to any award for lost
12   wages and benefits.

13   **C.     Punitive Damages**

14          36.     Plaintiff's Complaint also seeks recovery for punitive damages. (See
15   Complaint, ¶¶ 60, 68, 74, 78, 83, 88 and Prayer at ¶ 3.)

16          37.     "Where both actual and punitive damages are recoverable under a
17   complaint, each must be considered to the extent claimed in determining
18   jurisdictional amount." *Bell vs. Preferred Life Assurance Society*, 320 U.S. 238,
19   240 (1943); *Gibson v. Chrysler Corp.,* 261 F.3d 927, 945 (9th Cir. 2001) ("It is
20   well established that punitive damages are part of the amount in controversy in a
21   civil action."); *Simmons*, 209 F.Supp.2d at 1033 (court may consider punitive
22   damages recoverable under FEHA when determining the amount in controversy).

23          38.     As with emotional distress damages, the California courts have
24   awarded plaintiffs significant punitive damages in employment actions. *See Lopez*,
25   *supra*, 2007 WL 4339112 (awarding the plaintiff $2,000,000 in punitive damages
26   for wrongful termination, failure to prevent discrimination, and failure to
27
28

---

[3] All jury verdicts referenced herein are attached hereto as Exhibit "2."

accommodate a pregnant employee); *Wysinger v. Automobile Club of Southern California*, 2006 WL 397031 (Santa Barbara Super. Ct.) (awarding $1,000,000 in punitive damages to an employee terminated due to his age and disability).

39.     Therefore, if Plaintiff were to prevail at trial, she could be awarded a substantial amount of punitive damages, which must be taken into consideration in evaluating the amount-in-controversy requirement for purposes of removal.

**D.     Attorneys' Fees**

40.     Attorneys' fees may be included in the amount in controversy if recoverable by statute or contract. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998). Attorneys' fees are recoverable as a matter of right to the prevailing party under FEHA. *See* Cal Gov't Code § 12965.

41.     Here, Plaintiff seeks attorneys' fees under FEHA pursuant to Government Code Section 12965(b). (Prayer ¶ 5.) Thus, the court must consider Plaintiff's request for attorneys' fees in assessing the amount-in-controversy requirement.

**E.     <u>Summary of Amount-In-Controversy Requirement</u>**

42.     As demonstrated above, Plaintiff's Complaint, on its face, contains numerous cumulative and alternative bases to establish that the damages sought by her exceed the Court's jurisdictional minimum of $75,000. *See White v. FCI USA, Inc.* 319 F.3d 672, 674 (5th Cir. 2003) (facially apparent that wrongful termination claim exceeded $75,000 due to lengthy list of damages including loss of pay, fringe benefits, emotional distress, and attorneys' fees).

## VI.

## CONCLUSION

43.     Because this civil action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs, EMD Serono respectfully requests that this Court exercise its removal jurisdiction over this action.

1     44.    In the event this Court has a question regarding the propriety of this

2  Notice of Removal, EMD Serono requests that the Court issue an Order to Show

3  Cause so that it may have an opportunity to more fully brief the Court on the basis

4  for this removal.

5

6

7  DATED:   June 9, 2011                    OGLETREE, DEAKINS, NASH, SMOAK &
                                            STEWART, P.C.
8

9

10                                          By: _____

11                                          Allison C. Eckstrom
                                            Attorneys for Defendant
12                                          EMD SERONO, INC.

   10340462.2 (OGLETREE)
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## INDEX OF EXHIBITS

2

3  EXHIBIT 1                    Conformed copy of Summons and Complaint, including

4                               Court-issued documents, filed on April 27, 2011 in the

5                               Orange County Superior Court.

6  EXHIBIT 2                    Copies of jury verdicts referenced in Petition of

7                               Removal.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

 **CT Corporation**

**Service of Process Transmittal**
05/11/2011
CT Log Number 518502783

| | |
|---|---|
| **TO:** | James W. Burns<br>EMD Serono, Inc.<br>One Technology Place<br>Rockland, MA 02370- |
| **RE:** | **Process Served in Delaware** |
| **FOR:** | EMD Serono, Inc. (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Mary Allen, etc., Pltf. vs. EMD Serono, Inc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Attachment, Proof(s) of Service, Complaint, Demand, Cover Sheet, Instruction, Attachment(s), Chart, Stipulation Form |
| **COURT/AGENCY:** | Orange County Superior Court, CA<br>Case # 30-2011-00470623 |
| **NATURE OF ACTION:** | Employee Litigation - Discrimination - Wrongful termination on the basis of sex |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/11/2011 at 14:45 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Matthew D. Girardi<br>Girardi Firm, LLP<br>1600 Rosecrans Avenue<br>4th Floor<br>Manhattan Beach, CA 90266<br>310-321-7656 |
| **REMARKS:** | Please note the process server underlined and/or highlighted the entity being served prior to receipt by CT. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 797088448852 |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:** | The Corporation Trust Company<br>Scott LaScala<br>1209 Orange Street<br>Wilmington, DE 19801 |
| **TELEPHONE:** | 302-658-7581 |

Page 1 of 1 / LP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

EXHIBIT 1
Page 13

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

EMD SERONO, INC., a Delaware Corporation;
(Additional Parties Attachment form is attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MARY ALLEN, an individual;



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

APR 29 2011

ALAN CARLSON, Clerk of the Court

BY: N. DORFMAN   DEPUTY

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* |
|---|---|
| Orange County Superior Court, Central Justice Center 700 Civic Center Drive West, Santa Ana, California 92701 | 30-2011-00470623-CU-WT-CJC |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Matthew D. Girardi, 1600 Rosecrans Avenue, 4th Floor, Manhattan Beach, CA 90266, (310) 321-7656

| DATE: APR 29 2011 *(Fecha)* | ALAN CARLSON *(Secretario)* | N. DORFMAN, Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Emd Seronto Iur

   under: ☑ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☑ by personal delivery on *(date):* 5/11/11

[SEAL]

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Page 1 of 1 Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |

**EXHIBIT 1**
**Page 14**

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Allen v. EMD Serono, Inc., et al | 30-2011-00470623-CU-WT-CJC |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties
   Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

[ ] Plaintiff   [✓] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

BRIAN MILLER, an individual and resident of Massachusetts;
TIM BARR, and individual and resident of California;

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

EXHIBIT 1
Page 15

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

THE GIRARDI FIRM LLP
Matthew D. Girardi (State Bar No. 239007)
1600 Rosecrans Avenue, 4th Floor, Manhattan Beach, California 90266
Matt@GirardiFirm.com
TELEPHONE NO.: (310) 321-7656    FAX NO.: (310) 321-7657
ATTORNEY FOR (Name): PLAINTIFF Mary Allen, an individual

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

APR 27 2011

ALAN CARLSON, Clerk of the Court

BY        B. LEA        , DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana 92701
BRANCH NAME: Central Justice Center

CASE NAME:
Allen v. EMD Serono, Inc., A Delaware Corporation; et al

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 30-2011 |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: 00470623 DEPT: |

JUDGE CHARLES MARGINES
DEPT. C19

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[✓] Wrongful termination (38)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[✓] monetary   b.[ ] nonmonetary; declaratory or injunctive relief   c.[✓] punitive
4. Number of causes of action (specify):   See Attachment
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: April 27, 2011

Matthew D. Girardi
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

EXHIBIT 1
Page 16

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the *primary* cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)—Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) (*if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto*)
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability (*not asbestos or
    toxic/environmental*) (24)
  Medical Malpractice (45)
    Medical Malpractice—
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) (*not civil
    harassment*) (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      (*not medical or legal*)
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract (*not unlawful detainer
      or wrongful eviction*)
    Contract/Warranty Breach–Seller
      Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage (*not provisionally
    complex*) (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent
      domain, landlord/tenant, or
      foreclosure*)
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) (*if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential*)
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    (*arising from provisionally complex
    case type listed above*) (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment (*non-
      domestic relations*)
    Sister State Judgment
    Administrative Agency Award
      (*not unpaid taxes*)
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint (*not specified
    above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-
      harassment*)
    Mechanics Lien
    Other Commercial Complaint
      Case (*non-tort/non-complex*)
    Other Civil Complaint
      (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition (*not specified
    above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

EXHIBIT 1
Page 17

**<u>Attachment to Civil Case Cover Sheet</u>**

**4. Causes of Action:**

1. Discrimination;

2. Harassment;

3. Retaliation;

4. Failure to Prevent Discrimination;

5. Intentional Infliction of Emotional Distress;

6. Breach of the Implied Covenant of Good Faith and Fair Dealing;

EXHIBIT 1
Page 18

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

APR 2 7 2011

ALAN CARLSON  Clerk of the Court

BY _____ B. LEA _____ ,DEPUTY

1  MATTHEW GIRARDI (Bar No. 239,007)
   GIRARDI FIRM, L.L.P.
2  1600 Rosecrans Avenue
   4th Floor Media Center
3  Manhattan Beach, California 90266
   Telephone: (310) 321-7656
4  Facsimile: (310) 321-7657

5  Attorneys for PLAINTIFF MARY ALLEN.

6

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        ORANGE COUNTY

10                                          30-2011

11  MARY ALLEN, an individual;        CASE NO.  0 0 4 7 0 6 2 3

12           Plaintiff,               **COMPLAINT FOR DAMAGES**

13      vs.

14  EMD SERONO, INC., a Delaware       Complaint for:
    Corporation;                       1. Discrimination;
15  BRIAN MILLER, an individual and resident   2. Harassment;
    of Massachusetts;                  3. Retaliation;
16  TIM BARR, an individual and resident of    4. Failure to Prevent Discrimination;
    California;                        5. Intentional Infliction of Emotion Distress;
17           Defendants.              6. Breach of the Implied Covenant of Good
                                       Faith and Fair Dealing;
18

19  Plaintiff alleges as follows:        **JUDGE CHARLES MARGINES**
                                              **DEPT. C19**
20                        JURISDICTION AND VENUE

21

22      1.      The Court has personal jurisdiction over the Defendants because they are

23  residents of the State of California and conduct business within the State of California.

24

25      2.      Venue is proper in Orange county in accordance with section 395 (a) of the

26  California Code of Civil Procedure because some of the defendants reside in Orange County

27  California.

28

783812.1

JUDGMENT CREDITOR'S OPPOSITION TO JUDGMENT DEBTOR'S MOTION TO STRIKE

EXHIBIT 1
Page 19

3.      Plaintiff Mary Allen is and at all relevant times herein was an individual and a resident of the State of California, County of Fresno.

4.      Plaintiff is informed and believes and thereon alleges that Defendant EMD Serono, Inc., ("EMD Sorono" or "Serono") is an Delaware corporation with its principal place of business in Massachusetts.

5.      Plaintiff is informed and believes and thereon alleges that Defendant Bryan Miller ("Miller") is and at relevant times herein was an individual and resident of Massachusetts.

6.      Plaintiff is informed and believes and thereon alleges that Defendant Timothy Barr (Barr) is and at all relevant times herein was an individual and resident of Orange County, California.

7.      Defendant DOES 1 through 100, inclusive, are/is in some way responsible for the injuries suffered by Plaintiff. The true names and capacities of defendants named herein as DOES 1 through 100, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff who therefore sues such defendants by such fictitious names pursuant to C.C.P. § 474. Plaintiff will seek leave of this Court to amend this Complaint to show true names and capacities when they have been determined. Plaintiff is informed and believes and thereon alleges that each Defendant DOES herein is in some manner responsible for the wrongful conduct and damages herein alleged.

8.      Plaintiff is informed and believes and thereon alleges that each Defendant is, and at all relevant times mentioned was, the agent, employee, or representative of each other Defendant. Each defendant in doing the acts or in omitting to act as alleged in this Complaint, was acting within the scope of his or her actual or apparent authority or the alleged acts and

EXHIBIT 1
Page 20

1   omissions of each Defendant as agent subsequently were ratified and adopted by each other

2   defendant as principal. Unless noted otherwise herein the term Defendants shall mean and refer

3   to EMD Serono, Inc., Brian Miller and Tim Barr and DOES 1 through 100, collectively and each

4   of them individually.

5

6                        **FACTS COMMON TO ALL CAUSES OF ACTION**

7

8        9.     In 1989, serial killer Theodore Bundy was executed in Florida's electric chair, the

9   Soviet Union removed their last troops from their nine year war with Afghanistan, President

10   George Herbert Walker Bush took the oath of office and replaced Ronald Regan as president of

11   the United States and Plaintiff commenced working for Defendant EMD Serono (then Serono

12   Laboratories). At that time, Serono Laboratories as the world leader in infertility therapy. In the

13   United States, Serono Laboratories was the sole pharmaceutical company providing

14   gonadotropins for injection. This was revolutionary for the fertility field and Plaintiff was

15   excited to be on the "cutting edge" in a field that provided so much joy to so many families.

16

17       10.    Plaintiff was in the right place at the right time. For the first ten years, Plaintiff's

18   position evolved as the field of "reproductive medicine" evolved. Initially, Plaintiff was hired to

19   work with Ob/GYNs in order to create product awareness about first line infertility treatment

20   with clomiphene citrate tablets called Serophene. Plaintiff loved her job and worked

21   exceptionally hard.

22

23       11.    Plaintiff worked her way up to reproductive endocrinology. As her fields

24   changed, her territory changed and Plaintiff's geographical demands changed requiring plaintiff

25   to travel throughout West. Plaintiff did not care. Plaintiff loved her job and quite frankly,

26   Plaintiff was great at it as demonstrated by her many awards, commendations, bonuses and

27   stellar reviews.

28

3

PLAINTIFF'S COMPLAINT

EXHIBIT 1
Page 21

12.    Plaintiff was eager to learn and stay on the cutting edge of reproductive medicine and reproductive endocrinology. Plaintiff thrived on the high caliber of co-workers and the supportive management that was the norm then at EMD Serono.

13.    Plaintiff first worked for John Abel, who fostered a "team" environment anchored in respect and encouragement. Mr. Abel recognized hard work and achievement and rewarded the same. Through Plaintiffs work ethic, customer relationship skills, and technical aptitude, Plaintiff earned her first promotion to clinical science liaison in 1994. Plaintiff was hand-picked as one of eight field representatives to join this team under the Medical Department. The intersection of pharmaceuticals and the reproductive medicine field was intensely attractive to me.

14.    On or about 1998, Plaintiff worked on her first product launch, Fertinex. Fertinex was revolutionary because it utilized an advanced method of purification of urinary FSH. This offered great clinical benefits, as a patient could now inject their medication subcutaneously. Prior to Fertinex, all medication had to be injected into the muscle. This revolutionized the game and it was thoroughly exciting to be a part of this revolution. Plaintiff's sales of Fertinex were consistently ranked in the top portion of the country.

15.    Plaintiffs abilities were again recognized when she was selected by Medical Director Eduardo Kelly, M.D. to work as the exclusive field based clinical research associate. This was an amazing opportunity as Plaintiff recruited, supervised, and organized a multi-center, international clinical trial for 25 international sites.

16.    At the completion of that project, Plaintiff again entered the sales force. Plaintiff was fortunate enough to be supported by Sherri Saunders, an energetic achiever. With Sherri, Plaintiff thrived. Plaintiff was awarded a series of awards and commendations for consistently

4
PLAINTIFF'S COMPLAINT

EXHIBIT 1
Page 22

1  being in the top of the sales force for performance.

2

3      17.     In or about June 2005, Plaintiff noticed that things started to change and the

4  business landscape at EMD Serono began to change drastically.  EMD Serono instituted a

5  business model that was unique and looking back, disastrous.  EMD Serono entered a semi-

6  exclusive distribution deal with Freedom Fertility Pharmacy ("Freedom").  Freedom would be

7  Serono's preferred pharmacy provider, and offer a set and the best possible cash price on the

8  Serono family of fertility products to cash paying patients.

9

10     18.     The business model did not work for many reasons.  What followed was an

11  intense wave of criticism, hostility, and backlash from customers (i.e. physicians, nurses,

12  pharmacies, and competitive representatives.)

13

14     19.     In 2006, Serono was still fighting a war and in an attempt to regain their market

15  leader position, Serono implements another business model concept; the Strategic Account

16  Manager . (SAM)

17

18     20.     In July 2006, Plaintiff was hand selected for another promotion, to a Strategic

19  Account Manager position.  Although it was deemed an "honor" to be selected for one of these

20  positions, Plaintiff was immediately skeptical of the position in light of the limited business

21  opportunities that came with it as it only had four (4) accounts.  I thought that if anything drastic

22  happened to one of the four companies or the economy, my numbers would be devastated.

23

24     21.     From on or about 2006 through 2008, many longtime Serono employees were

25  terminated and the vast majority of them seemed to be women in their forty's (40's).  During

26  this period, Plaintiff noticed fewer and fewer forty-year old women employed by Serono.  What

27  they were being replaced with were younger Caucasian males.

28

5<br>PLAINTIFF'S COMPLAINT

EXHIBIT 1<br>Page 23

22.    In July 2007, the Strategic Account Group went through another transition.  Brian Miller, who previously managed three east coast reps took over the SAMs.  Although Miller initially tries to be charming and "a friend" over time the charming Miller was replaced by chronic condescending and belittling behavior towards Plaintiff by Miller.  Miller elevates his own opinion of himself by chronically and habitually hurting the people who work for him.

23.    In 2007, Plaintiff was able to earn bonus' throughout the year for reaching certain quotas.  In spite of that fact, Plaintiff looked at other career opportunities within EMD Serono. That year, Plaintiff interviewed for two positions inside of EMD Serono.  Although Miller gave "his blessing" to Plaintiff applying for other positions, Miller treated Plaintiff worse after she "dare" look at other opportunities within the company.   Both positions were filled with Caucasian male candidates.

24.    In 2008, the infertility market took a turn for the worse.   Economic forces impacted California as the real estate market plummeted in California worse than in other states. Unemployment rates hit record highs.  These economic conditions destroyed the infertility market in California as 75% to 80% are required to pay cash for fertility services unlike other states that mandate insurance coverage for such treatment.

25.    In addition to the economic forces crushing the fertility market in California, EMD Serono's semi-exclusive partner Freedom Pharmacy also experienced a set-back when they lost their compounding license in the state of California.  Compounding medications that are typically ordered with EMD Serono's Gonal F medication had to be outsourced from Freedom Pharmacy to other various pharmacies.  This made it very difficult and confusing for patients to acquire their medications.

26.    In spite of the devastated economic environment, Plaintiff was still able to

6

*PLAINTIFF'S COMPLAINT*

EXHIBIT 1
Page 24

1   achieve great performance reviews. (103%, 81%, 86% respectively)  In spite of those

2   performance ratings, Miller continuously degraded Plaintiff, by insulting Plaintiff, making fun of

3   Plaintiff and sharing information about Plaintiff with Barr and others. Miller clearly had a

4   vendetta against Plaintiff.  The problem was Plaintiff was older and not as big a partier as Miller.

5   Miller enjoys drinking and maintaining a strong "social" calendar.  Plaintiff liked to work for

6   EMD Serono, she did not like to party with EMD Serono.  By not being  a big partier, she was

7   excluded from opportunities in Miller's grand scheme and deemed an outsider.

8

9        27.    In 2008, Miller and Plaintiff's Boston area Strategic Account Manager Ruth

10   Saremi, assisted Plaintiff in organizing a National Speaker Event in the Boston area promoting

11   Plaintiffs key physician, Dr. Daniel Potter, MD.  Miller insisted on taking Dr. Potter out for a

12   'boys night on the town.'  This created a great many conflicts, problems, and violations.  Plaintiff

13   was not comfortable with this kind of business.  Someone who was comfortable with this type of

14   business was Defendant Tim Barr.

15

16        28.    Barr was always Miller's right hand man.  In connection with Miller, and with

17   Miller's assistance, Barr would regularly make fun of Plaintiff in order to elevate his status with

18   Miller.  Barr was a member of the Miller team and very much a participant in Miller's social

19   activities.

20

21        29.    In the spring of 2009, Miller once again treated Dr. Potter to a similar night on the

22   town.  Plaintiff intentionally insulated herself from this activity because she was very conscious

23   of the ramifications.  Miller knew Plaintiff was against this practice and Plaintiff was concerned

24   Miller would retaliate against her for it.

25

26        30.    In 2009, Plaintiff was presented with yet another challenge; another realignment

27   of Plaintiff's territory.  Serono wanted to take advantage of the cash paying customers in

28

7
PLAINTIFF'S COMPLAINT

EXHIBIT 1
Page 25

California and created another Strategic Account Manager position in San Diego. I thought this was a curious choice as the cash paying market in California had dramatically decreased.

31.     Tim Barr was made Strategic Account Manager in the southern California area. Tim Barr was a great ally of Miller's as they had similar interests. Each enjoyed the social aspects of EMD Serono and took full advantage of the social opportunities presented them.

32.     In the wake of the 2009 territory realignment, Plaintiff's relationship with Miller further deteriorated. Plaintiff no longer had the crown jewel of the west coast reproductive industry and she didn't have the support of her boss, Miller. Instead, Miller focused on Tim Barr as Barr was more interested in the social aspects of EMD Serono similar to Miller. Barr also was now in charge of the territories that had the most promise in California. Plaintiff knew this fact because they had at one time been her territories.

33.     Plaintiff was told by other EMD Serono employees that Miller was never 'comfortable' with Plaintiff. Plaintiff was an outlier. Plaintiff was very different from Miller. Plaintiff was serious, calmer, and possessed more of a detailed insight to situations. Miller immediately excitable, and reactionary to situations. Miller associated himself with younger male employees who enjoyed partying. Plaintiff was an older woman who enjoyed working for EMD Serono and spending time with her family. Miller is referred to as "the fraternity boy" by other members within EMD Serono. Plaintiff has no problem with partying, it just seems Miller had a problem with people who didn't party. Younger caucasian men who partied hard were promoted within the company while older women who did not party were given territories that didn't produce and predictably they were terminated for poor sales figures.

34.     At the national award ceremony in 2009, Plaintiff took notice of a demographic fact. EMD Serono would have their management directors stand on the stage representing the

EXHIBIT 1
Page 26

1  various therapeutic businesses units and presented the awards. There were approximately eight

2  such managers and each and every one of them was a Caucasian man in their late 30's to early

3  40's. the good ol' boys club is alive and well at EMD Serono.

4

5       35.    In June, 2009, Plaintiff attended their SAM Team Plan on Action Meeting. It was

6  the first time Plaintiff was thoroughly frustrated with EMD Serono. Many of Plaintiffs'

7  colleagues were intoxicated and Miller obviously enjoyed himself. It was more fraternity party

8  and less corporate function. Miller could sense I was frustrated with the performance at that

9  function in particular.

10

11       36.    In July 2009, Plaintiff received her mid year performance review. It was by far

12  the worst performance review in her nearly 20 years at Serono. Plaintiff was dismayed. Plaintiff

13  knew the numbers were not stellar; however, the diminution in numbers had nothing to do with

14  Plaintiff's performance or work. It had to do with the economy and the territory Plaintiff was

15  relegated to.

16

17       37.    Instead of panicking, Plaintiff did what she was trained to do for 20 years at EMD

18  Serono. She used these challenges as an opportunity. In spite of (1) being demoralized (2) in

19  possession of an impossible territory (that plaintiff feels was created solely to cause her to fail)

20  (3) having a manager that treated her with disdain and as a nuisance and who did virtually

21  nothing to support Plaintiff was going to work as hard as possible for the benefit of EMD

22  Serono. After all, they had been *together* for nearly twenty years.

23

24       38.    Don Hribek, a long time trusted EMD Serono member of management met with

25  Plaintiff and Miller and agreed with Plaintiff that the focus of her review was unnecessarily

26  negative and modified some of the language to be more accurate and less critical of Plaintiff.

27

28

EXHIBIT 1
Page 27

39.     On December 3, 2009, Plaintiff was presented with her first Performance Improvement Plan ("PIP") in her nearly twenty-year career at EMD Serono.  Miller advised Plaintiff of being on a PIP where else, but the lobby bar; an inappropriate venue for such a serious matter.

40.     Miller explained that he had no choice but to put Plaintiff on a PIP considering the performance numbers for her territory.  Miller explained he was 'harder' on Plaintiff than any member of the team.   "Why?" Plaintiff wondered?  Plaintiff was told that her salary was the highest in the nation.  He also indicated that other territories were outperforming Plaintiff's. What was obvious was the territories were created for Plaintiff to fail.

41.     The PIP outlined specific areas of improvement and assigned specific activities to be performed by the representative.  The PIP also detailed the responsibilities from management level such as biweekly conference calls to evaluate progress, field visits in order to coach and develop the representative on the PIP.

42.     Plaintiff immediately took the criticisms within the PIP to heart.  Plaintiff immediately began to implement the terms of the PIP and was going to use the PIP to get the territory and her position back on track.  Plaintiff focused on leadership and communication amongst her peers as those were two of Miller's chief criticisms.  The instant the Freedom numbers were made available, Plaintiff immediately provided analysis including an action plan to improve the numbers for EMD Serono.

43.     Miller was supportive of Plaintiff for about 10 days immediately after issuing the PIP.  However, after 10 days, he was back to being unavailable and disinterested.  The PIP called for weekly conference calls between Plaintiff and Miller and others.  They had one such conference call on December 7, 2009.  That is when Miller began playing "cat and mouse" with

EXHIBIT 1
Page 28

1  Plaintiff.  Although the PIP called for weekly calls between Plaintiff and Miller, Miller would

2  avoid Plaintiff's calls.

3

4      44.    The PIP also required Plaintiff and Miller to work together in January and

5  February 2010 so Miller could "guide, counsel, and mentor" Plaintiff.  Miller cancelled his

6  January trip to the west coast.  In February 2010, Miller cancelled his Seattle trip due to

7  weather.  It was apparent to Plaintiff that Plaintiff's success or the Performance Improvement

8  Plan was no priority to Miller in spite of his duties to do so.

9

10     45.    Plaintiff was at wits end.  In December, Plaintiff began seeing a therapist for

11  treatment of the unbearable stress she had been put under by Miller and Barr's underhanded

12  tactics and abuse.  Plaintiff was stressed beyond belief.  She had chest pains, bleeding gums and

13  she was chronically worried and distraught.  As the then sole breadwinner in her family, she was

14  bearing the burden of a family of five and not receiving any help from the company she had been

15  with for nearly twenty years.

16

17     46.    As the PIP time period continued, Plaintiff tried to follow the responsibilities

18  detailed in the PIP and Miller continued to do nothing to support Plaintiff.  On January 29, 2010,

19  Plaintiff contacted Bob Buck of Human Resources at EMD Sorono and expressed her concerns

20  in writing.  In summary, Plaintiff felt she was not being supported during the PIP.  Furthermore,

21  the PIP was supposed to terminate March 3rd and Plaintiff had received no guidance from Miller

22  whatsoever as was required under the PIP.  All Miller did was continue to embarrass and

23  criticize Plaintiff.

24

25     47.    On February 21, 2010, Plaintiff attended the National Plan of Action Meeting

26  with Miller.  Miller would not look at Plaintiff.  Miller did not acknowledge Plaintiff being at the

27  function.  This could have been an opportunity for Miller to do some of the things mandated by

28

EXHIBIT 1
Page 29

1    the PIP however; he used it as an opportunity to further alienate Plaintiff. It was at this

2    conference, Miller referred to Plaintiff and other forty something year old women as the "B

3    team."

4

5        48.    Plaintiff learned in 2010 that Miller was marked down in his review for not

6    supporting, fostering, or developing Plaintiff.

7

8        49.    Miller then issued a review of Plaintiff in the Mid Point Summary. The Mid Point

9    Summary pushed the potential end date of the PIP to April 9, 2010. Presumably this was to

10   allow Miller to perform some of the duties required of him under the terms of the PIP. Miller

11   indicated there would be two field visits in order to "assist Plaintiff and provide coaching and

12   feedback." The field visits were scheduled for March 24th and 25th and 31st, immediately prior to

13   the April 9th termination of the PIP date.

14

15       50.    Plaintiff attempted to discuss certain things with Miller about their impending

16   field visits. However, Miller ignored Plaintiffs phone calls and text messages. Plaintiff sent

17   Miller and e-mail on 3/18/2010 stating it "appeared [Miller] did not want to connect." Miller

18   finally called Plaintiff a few days later and said stated Plaintiff and Miller would have a few

19   drinks when we work together in March and review the summary then. Plaintiff didn't feel like

20   having a few drinks with Miller.

21

22       51.    On March 24, 2010, Plaintiff and Miller visited PFC (one of Plaintiffs accounts).

23   PFC was very complimentary towards Plaintiff's work. Dr. Caroline Givens told Miller that

24   Plaintiff was stellar in her interactions with PFC. Furthermore, the CEO of PFC, Bob Strickland

25   told Miller that Plaintiff was "the best representative that had ever called on PFC."

26

27       52.    Since the start of the PIP, Plaintiff was able to gain a commitment from PFC to

28

12
PLAINTIFF'S COMPLAINT

EXHIBIT 1
Page 30

1    use EMD Serono's Gonal F, a huge victory for EMD Serono and Plaintiff, she thought.

2

3        53.    On March 25, Plaintiff and Miller visted SRM (another account of Plaintiff's).

4    and the responses were similar.

5

6        54.    On April 27, 2010, Miller met with Plaintiff in San Francisco and told her she was

7    terminated after twenty years with the company.

8

9        55.    Shortly thereafter, Plaintiff filed complaints with DFEH and received a right to

10   sue letter shortly thereafter.

11

12                              **FIRST CAUSE OF ACTION**
13                                **DISCRIMINATION**
                                 (Against Serono, Miller)
14

15       56.    Plaintiff repeats and incorporates by reference each and every allegation of this

16   complaint as though set forth herein in full.

17       57.    At all relevant times until she was fired on April 27, 2010, Plaintiff was a twenty

18   (20) year employee of Defendant EMD Serono, Inc.

19       58.    At all relevant times herein, and in violation of Cal. Gov. Code Section 12940(a)

20   defendant EMD Serono, Inc., discriminated against Plaintiff on the basis of her gender by

21   subjecting her to disparate treatment in terms of conditions of her employement.  Defendnat's

22   discrimination against Plaintiff includes but is not limited to: treating Plaintiff differently than

23   similarly situated male employees in regard to terms and condtions of employment; favoring

24   male employees in disciplinary decisions; undermining Plaintiff's authority as a supervisor and

25   ability to perform her job successfully; refusing to provide Plaintiffs a legitimate performance

26   evaluation and ultimately terminating plaintiff because of her gender.

27       59.    As a direct and proximate result of Defendants' unlawful conduct, plaintiff has

28   suffered and will continue to suffer pain and suffering, anxiety, embarrassment, humiliation;;

                                         13

EXHIBIT 1
Page 31

1  loss of self-esteem; depression; severe mental anguish and emotional distress; loss of earnings

2  and other employment benefits.  Plaintiff is therefore entitled to general and compensatory

3  damages in an amount according to proof at trial.

4       60.    The conduct of Defendants and their agents/employees, as described herein, was

5  malicious and oppressive and done with willful and conscious disregard for Plaintiff's rights

6  entitled Plaintiff to an award of Punitive damages from Defendants.

7  **SECOND CAUSE OF ACTION**<br>**HARRASSMENT**<br>(Against All Defendants)

8

9

10       61.    Plaintiff repeats and incorporates by refence each and every allegation in this

11  Complaint as though set forth in full herein.

12       62.    At all relevant times until she was fired April 27, 2010, Plaintiff was an employee

13  of Defendant EMD Serono, Inc.

14       63.    Throughout the last 5 years of her employment, Defendants, and each of them,

15  subjective Plaintiff to unwarned harassing conduct based on Plaintiffs sex and her age.

16  Defendants harassment included, but was not limited to:  making fun of plaintiffs age; telling

17  other employees that Plaintiff was "on a plan (PIP) and on the way out"; telling other employees

18  that Plaintiff was 'on the B-team' because she was a 40 plus year old woman, and constantly

19  favoring younger male employees.

20       64.    Defendants harassment of Plaintiff was so severe and pervasive that any

21  reasonable woman would have found her work environment to be hostile or abusive.

22       65.    Plaintiff, at all times relevant herein, considered Defendants' conduct as described

23  herein to create a hostile and abusive work environment.

24       66.    Defendant Miller engaged in the harassing conduct as a supervisor within the

25  meaning of Cal. Gov. Code Section 12926®. Defendant EMD Serono, Inc., knew or should

26  have known of the harassing conduct and failed to take appropriate, corrective action.

27       67.    As a direct and proximate result of Defendants' unlawful conduct, plaintiff has

28  suffered and will continue to suffer pain and suffering; anxiety; embarrassment; humiliation; loss

    of self-esteem; depression; sever mental anguish and emotional distress; loss of earnings and

EXHIBIT 1<br>Page 32

1  other employment benefits. Plaintiff is therefore entitled to general and compensatory damages

2  in an amount to be proved at trial.

3      68.    The conduct of Defendants and/or their agents/employees, as described herein,

4  was malicious and oppressive and done with the wilfull and conscious disregard for Plaintiff's

5  rights entitled Plaintiff to an award of punitive damages from Defendants.

6                          **THIRD CAUSE OF ACTION**
                                **RETALIATION**
7                          (Against Serono and Miller)

8
9      69.    Plaintiff repeats and incorporates by reference each and every allegation of this

   complaint as though set forth in full herein.
10
11     70.    On various occasions during the final year of Plaintiff's employment with

   Defendant EMD Serono, Plaintiff complained to her supervisor's Supervisor Don Hribak and or
12
13  to human resources concerning the treatment she received from Miller. These complaints

   included but were not limited to Plaintiff's believing Miller was singling her out and being
14
15  overly harsh on her performance reviews (which eventually lead to her termination) and

   Plaintiff's believes that Miller was intentionally not performing under the terms of the PIP
16
   cementing Plaintiff's failure under the PIP.

17     71.    Defendant retaliated against Plaintiff by treating her poorly, by disseminating

18  private information about her to other employees, and reconfiguring her territory in order to

19  guarantee poor performance numbers.

20     72.    Plaintiff's complaints about defendants was a factor for Defendants to terminate

21  Plaintiff.

22     73.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has

23  suffered and will continue to suffer pain and suffering; anxiety; embarrassment; humiliation; loss

   of self-esteem; depression; severe mental anguish and emotional distress; loss of earnings and
24
25  other employment benefits. Plaintiff is therefore entitled to general and compensatory damages

   in the amount to be proved at trial.
26
27     74.    The conduct of Defendants and/or their agents/employees, as described herein,

28  was malicious and oppressive and done with willful and conscious disregard for Plaintiff's rights

---

                                    15

EXHIBIT 1
Page 33

1    entitling Plaintiff to an award of punitive damages from Defendants.

2

3                          **FOURTH CAUSE OF ACTION**
        **FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND/OR**
4                                  **RETALIATION**
                               (Against Defendant Serono)
5

6           75.     Plaintiff repeats and incorporates by reference each and every allegation of this

7    complaint as though set forth in full herein.

8           76.     During Plaintiff's nearly twenty year employment with EMD Serono, Inc.,

9    Plaintiff was subjected to harassing conduct and discrimination because she was a woman.

     Plaintiff was also subject to retaliation for having complained about the harassing conduct and
10
     discrimination.
11
            77.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has
12
     suffered and will continue to suffer pain and suffering; anxiety; embarrassment; humiliation; loss
13
     of self-esteem; depression; severe mental anguish and emotional distress; loss of earnings and
14
     other employment benefits.  Plaintiff is therefore entitled to general and compensatory damages
15
     according to proof at trial.
16
            78.     The conduct of Defendants and/or their agents/employees, as described herein,
17
     was malicious and oppressive and done with a willful and conscious disregard for Plaintiff's
18
     rights entitled Plaintiff to an award of punitive damages from Defendants.
19

20                          **FIFTH CAUSE OF ACTION**
           **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
21
22                             (Against All Defendants)

23          79.     Plaintiff repeats and incorporates by reference each and every allegation in this

24   complaint as though set forth in full herein.

25          80.     The conduct of Defendants, and each of them, as alleged above, was outrageous,

26   wholly outside the scope of normal employment relationships.

27          81.     Defendants knew that severe emotional distress would probably result from their

28   conduct, and said conduct was perpetrated by Defendants, and each of them, with the intent to

                                              16
                                    PLAINTIFF'S COMPLAINT

EXHIBIT 1
Page 34

1  inflict, or with the reckless disregard of the probability of inflicting humiliation, mental anguish,

2  and severe emotional distress upon Plaintiff.

3      82.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has

4  suffered and will continue to suffer pain and suffering; anxiety; embarrassment; humiliation; loss

5  of self-esteem; depression; severe mental anguish and emotional distress; loss of earnings and

6  other employment benefits.  Plaintiff is therefore entitled to general and compensatory damages

   in an amount to be proved at trial.

7      83.    The conduct of Defendants and/or their agents/employees, as described herein,

8  was malicious and oppressive and done with a willful and conscious disregard for Plaintiff's

9  rights entitled Plaintiff to an award of punitive damages from Defendants.

10

11              <u>SIXTH CAUST OF ACTION</u>
   <u>BREACH OF IMPLIED COVENENT OF GOOD FAITH AND FAIR DEALING</u>

12              (Against Miller and EMD Serono)

13

14      84.    Plaintiff repeats and incorporates by reference each and every allegation in this

15  complaint as though set forth in full herein.

16      85.    Implied within every agreement is an implied covenant of good faith and fair

17  dealing.  The Performance Improvement Plan and Plaintiff's employment contract are two such

18  agreements.

19      86.    Defendants Miller and EMD Serono, Inc., never intended to abide by the terms of

20  the Performance Improvement Plan nor the terms of her employment contract.

21      87.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has

22  suffered and will continue to suffer pain and suffering; anxiety; embarrassment; humiliation; loss

23  of self-esteem; depression; severe mental anguish and emotional distress; loss of earnings and

24  other employment benefits.  Plaintiff is therefore entitled to general and compensatory damages

25  in an amount to be proved at trial.

26      88.    The conduct of Defendants and/or their agents/employees, as described herein,

27  was malicious and oppressive and done with a willful and conscious disregard for Plaintiff's

28

EXHIBIT 1
Page 35

1 | rights entitled Plaintiff to an award of punitive damages from Defendants.

2

3      WHEREFORE, Plaintiff prays for judgment as follows:

4      1. For compensatory damages, including lost past and future wages, employee benefits,

5          medical bills, mental and emotional distress, and other special and general damages

6          according to proof but in excess of the jurisdiction thresholds of this court;

7      2. For an award of interest, including prejudgment interest, at the legal rate;

8      3. For punitive damages in an amount to be proved at trial on all causes of action for

9          which such damages are recoverable;

10      4. For such equitable relief as may be appropriate, including injunctive relief;

11      5. For reasonable attorney's fees pursuant to Gov. Code Section 12965(b), California

12          Code of Civil Procedure Section 1021.5, and all other applicable statutes;

13      6. For costs of suit incurred herein; and

14      7. For such other and future relief as this court may deem just and proper.

15

16

17

18

19    DATED: APRIL 22, 2011          **GIRARDI FIRM, LLP**
                                 MATTHEW GIRARDI

20

21                 By: _Matt D J_____

22                           Matthew Girardi
                           Attorneys for Plaintiff Mary Allen

23

24

25

26

27

28

EXHIBIT 1
Page 36

1

### DEMAND FOR JURY TRIAL

2

3   Plaintiff Mary Allen hereby demands trial by jury on all causes of action for which a jury trial is

4   available as a matter of right.

5

6

7

8   DATED: APRIL 27, 2011                    GIRARDI FIRM, LLP
                                             MATTHEW GIRARDI
9

10                                      By: _____
                                                    Matthew Girardi
11                                             Attorneys for Plaintiff Mary Allen

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1
Page 37

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ORANGE

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):**

**Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.**

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

(3) Information about the availability of local dispute resolution programs funded under the Dispute Resolutions Program Act (DRPA), in counties that are participating in the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its Web site as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action along with the cross-complaint.

EXHIBIT 1
Page 38

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ORANGE

### ADR Information

**Introduction.**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

**BENEFITS OF ADR.**

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

**Save Time.** A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

**Save Money.** When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

**Increase Control Over the Process and the Outcome.** In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

**Preserve Relationships.** ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction.** In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

**Improve Attorney-Client Relationships.** Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

**DISADVANTAGES OF ADR.**

ADR may not be suitable for every dispute.

**Loss of protections.** If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

EXHIBIT 1
Page 39

**Less discovery.** There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

**Additional costs.** The neutral may charge a fee for his or her services. If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

**Effect of delays if the dispute is not resolved.** Lawsuits must be brought within specified periods of time, known as statues of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

TYPES OF ADR IN CIVIL CASES.

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

**Arbitration.** In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

    **Cases for Which Arbitration May Be Appropriate.** Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

    **Cases for Which Arbitration May Not Be Appropriate.** If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Mediation.** In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

    **Cases for Which Mediation May Be Appropriate.** Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

    **Cases for Which Mediation May Not Be Appropriate.** Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Neutral Evaluation.** In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

EXHIBIT 1
Page 40

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate.** Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate.** Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences.** Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

**ADDITIONAL INFORMATION.**

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR types. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:
- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the Yellow Pages under "Arbitrators" or "Mediators"

Free mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA). For information regarding DRPA, contact:
- Community Service Programs, Inc. (949) 851-3168
- Orange County Human Relations (714) 834-7198

For information on the Superior Court of California, County of Orange court ordered arbitration program, refer to Local Rule 360.

The Orange County Superior Court offers programs for Civil Mediation and Early Neutral Evaluation (ENE). For the Civil Mediation program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session. For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session. Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) pilot programs is available on the Court's website at www.occourts.org.

# SUPERIOR COURT OF CALIFORNIA
## ORANGE COUNTY – CENTRAL JUSTICE CENTER
# CIVIL DEPARTMENT CALENDAR SCHEDULING CHART
Ex Parte applications must comply with California Rules of Court, rules 3.1200 – 3.1207
Court Local Rules are located at www.occourts.org

| Dept. | Judicial Officer | Motion Days and Time | Ex Parte Days and Time | Telephonic Notice to Courtroom the day before the hearing but no later than: | Ex Parte Application and Proposed Order presented to the court the day before the hearing but no later than: | Rulings posted on Internet? | Other Call for available dates. |
|---|---|---|---|---|---|---|---|
| C27 | MAKINO 657-622-5227 | Friday 9:00 a.m. | M,T,W,TH 8:45 a.m. | 10:00 a.m. Reservation must be made with courtroom prior to Ex Parte hearing. | 3:00 p.m. | Yes | Once tentative ruling is posted NO continuance will be granted or hearing cannot be taken off calendar |
| C19 | MARGINES 657-622-5219 | Wednesday 1:30 p.m. | Daily 1:30 p.m. | 10:00 a.m. | 10:30 a.m. | No | Notice must be given to opposing party by 10:00 a.m. day before ex parte hearing. |
| C7 | MARKS 657-622-5207 | Friday 10:30 a.m. Reservation Required | M,T,W,TH 1:30 p.m. | Reservation must be made with courtroom day before the hearing by noon | 3:00 p.m. | | Motions must be reserved with C-7 prior to filing by calling (557)622-5207 |
| C21 | MCEACHEN 657-622-5221 | Tuesday 1:30 p.m. | Daily 9:00 a.m. | 12:00 p.m. | 3:00 p.m. | yes | |
| C14 | MILLER 657-622-5214 | Tuesday 1:30 p.m. | T, W, TH, F 8:30 a.m. | 9:00 a.m. | 4:00 p.m. if day prior to the Ex Parte hearing is Monday-Thursday; 3:00 P.M. If day prior to the Ex Parte hearing is Friday. | Yes noon day of hearing | If Monday is a holiday, law and motion is heard on Thursday at 1:30 p.m. NOTE: for L&M, Dept. C14 requires parties call the dept. to check availability of a motion date prior to filing their motion by calling (657) 622-5214.  To schedule an ex parte matter the moving party/attorney shall contact the courtroom clerk  (657) 622-5214 to reserve a date no later than noon, the day prior to the hearing. Teleconference appearances are voluntary and do not require consent by court or other parties. However, the court reserves the right to reject any request. Teleconference appearances are conducted in conformity with the guidelines, which are available by calling CourtCall, LLC at (310)914-7884 or (888) 88-COURT |

EXHIBIT 1
Page 42

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name & Address)*: | FOR COURT USE ONLY |
|---|---|

Telephone No.:                         Fax No. (Optional):
E-Mail Address (Optional):
ATTORNEY FOR *(Name)*:                Bar No:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
**JUSTICE CENTER:**
☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045
☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512
☐ Harbor-Laguna Hills Facility – 23141 Moulton Pkwy., Laguna Hills, CA 92653-1251
☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595
☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500
☐ West – 8141 13ᵗʰ Street, Westminster, CA 92683-0500

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION** | CASE NUMBER: |
|---|---|

Plaintiff(s)/Petitioner(s)_____

_____

and defendant(s)/respondent(s), _____

_____

agree to the following dispute resolution process:

☐  Mediation

☐  Arbitration (must specify code)
           ☐ Under section 1141.11 of the Code of Civil Procedure
           ☐ Under section 1280 of the Code of Civil Procedure

☐  Neutral Case Evaluation

The ADR process must be completed no later than 90 days after the date of this Stipulation or the date the case was referred, whichever is sooner.

☐  I have an *Order on Court Fee Waiver* (FW-003) on file, and the selected ADR Neutral(s) are eligible to provide pro bono services.

☐  The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals.  We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court rule 3.720 et seq.

Date: _____    _____    _____
                  (SIGNATURE OF PLAINTIFF OR ATTORNEY)    (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date: _____    _____    _____
                  (SIGNATURE OF DEFENDANT OR ATTORNEY)    (SIGNATURE OF DEFENDANT OR ATTORNEY)

**ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION**    California Rules of Court, rule 3.221

Approved for Optional Use
L1270 (Rev. January 2010)

EXHIBIT 1
Page 43

1    **PROOF OF SERVICE**

2    STATE OF CALIFORNIA, COUNTY OF ORANGE

3         I am employed in the County of LOS ANGELES, STATE OF CALIFORNIA.  My
business address is 1600 Rosecrans Avenue, 4th Floor Media Center, Manhattan Beach, California
4    90266.  I am over the age of eighteen years and am not a party to the within action;

5         On APRIL 27, 2011, I served the following document(s) entitled **COMPLAINT
FOR DAMAGES; SUMMONS; ATTACHMENT TO SUMMONS; CIVIL CASE COVER**
6    **SHEET; ATTACHMENT TO CIVIL CASE COVER SHEET** on ALL INTERESTED
PARTIES in this action by placing true copies thereof enclosed in sealed envelopes addressed as
7    follows:

8

9    [ ] **BY MAIL:**  By placing a true copy thereof in a sealed envelope addressed as above, and
placing it for and mailing following ordinary business practices.  I am readily familiar with the
10   firm's practice of collection and processing correspondence, pleadings and other matters for
mailing with the United States Postal Service.  The correspondence, pleadings and other matters
11   are deposited with the United States Postal Service with postage thereon fully prepaid in
Manhattan Beach, California, on the same day in the ordinary course of business.  I am aware that
12   on motion of the party served, service is presumed invalid if the postal cancellation date or postage
meter date is more than one day after date of deposit for mailing in affidavit.
13
     [ ] **BY FACSIMILE:**  At _____, I caused said document(s) to be transmitted by
14   facsimile.  The telephone number of the sending facsimile machine was (310) 321-7657.  The
name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the
15   service list.  The document was transmitted by facsimile transmission, and the sending facsimile
machine properly issued a transmission report confirming that the transmission was complete and
16   without error.

17   [ ] **BY PERSONAL SERVICE:**  I personally delivered the documents listed above to the party,
or person authorized to receive service of process on behalf of the party, to the address listed
18   above.

19        I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.
20
     Executed on APRIL 27, 2011, at Manhattan Beach, California.
21

22

23        MICHAEL A. DIAZ

24

25

26

27

28

EXHIBIT 1
Page 44

**EXHIBIT 2**

Westlaw.

9 Trials Digest 11th 13 (Cal.Superior), 2008 WL 496470

Copyright (c) 2011 Thomson Reuters/West

Superior Court, Los Angeles County, California.

Kolas vs. Access Business Group LLC

**TOPIC:**
Synopsis: Workplace injury leads to wrongful termination
Case Type: Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Disability/Medical Condition; Labor & Employment; Age; Labor & Employment; Discrimination; Labor & Employment; Retaliation; Labor & Employment; Workplace Injury; Labor & Employment; Workers Compensation

DOCKET NUMBER: BC362432

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: January 14, 2008.

JUDGE: Michael C. Solner

**ATTORNEYS:**
Plaintiff: Maryann P. Gallagher, Law Offices of Maryann P. Gallagher, Los Angeles.
Defendant: Maria K. Aarvig, Creason & Aarvig, Riverside; Danielle K. Little, Creason & Aarvig, Riverside; Hector C. Perez, Creason & Aarvig, Riverside.

**SUMMARY:**
Verdict/Judgment: Plaintiff
Verdict/Judgment Amount: $600,000

Range: $500,000-999,999

$175,000 past lost earnings; $225,000 future lost earnings; $200,000 non-economic damages. The jury determined that plaintiff's disability and age and the fact that plaintiff filed a workers' compensation claim were motivating reasons for defendant's decision to fire plaintiff.
Trial Type: Jury
Deliberations: Not reported.
Jury Poll: Not reported.

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 2
Page 45

TEXT:
CASE INFORMATION
FACTS/CONTENTIONS

According to court records: Plaintiff Boris Kolas was employed by defendant Alticor Inc., erroneously sued as Access Business Group LLC, for more than nine years as a calibration technician. His job involved assuring that all of the equipment that measured weight, temperature, and other aspects of the vitamins and food supplements manufactured by defendant were proper in terms of the measurement taken and the documentation to prove that they were accurate.
Plaintiff alleged he was fired because of his age and/or because he was injured on the job. Plaintiff said he sustained a herniated disc while working.
Defendant contended that he was fired because audits done before the injury showed plaintiff was not doing his work properly and was subjecting the company to regulatory problems.

CLAIMED INJURIES
According to court records:
Emotional distress.

CLAIMED DAMAGES
According to court records:
$112,500 past lost income; $525,000 future lost income; $1,000,000 emotional distress.

SETTLEMENT DISCUSSIONS
According to court records:
Not reported.

COMMENTS
According to court records:
The complaint was filed on November 27, 2006.

Trials Digest, A Thomson/West business

Los Angeles County Superior Court/Downtown

9 Trials Digest 11th 13 (Cal.Superior), 2008 WL 496470

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 2
Page 46

Westlaw.

49 Trials Digest 10th 7                                                                                          Page 1

49 Trials Digest 10th 7 (Cal.Superior), 2007 WL 4339112

Copyright (c) 2011 Thomson Reuters/West

Superior Court, San Francisco County, California.

Lopez vs. Bimbo Bakeries USA Inc.

TOPIC:
Synopsis: Bakery fires delivery driver because of pregnancy
Case Type: Labor & Employment; Discrimination; Labor & Employment; Disability/Medical Condition; Labor & Employment; Gender; Labor & Employment; Retaliation; Labor & Employment; Harassment-Sexual; Labor & Employment; Violation of Public Policy; Intentional Torts; Infliction of Emotional Distress

DOCKET NUMBER: CGC05445104

STATE: California
COUNTY: San Francisco

Verdict/Judgment Date: June 21, 2007

JUDGE: Ronald Quidachay

ATTORNEYS:
Plaintiff: Daniel L. Feder, Law Offices of Daniel L. Feder, San Francisco; Christopher R. LeClerc, Law Offices of Daniel L. Feder, San Francisco.
Defendant: E. Joseph Connaughton, Paul, Plevin, Sullivan & Connaughton, San Diego; Melissa Listug Klick, Paul, Plevin, Sullivan & Connaughton, San Diego; Wendy M. Lazerson, Bingham McCutchen, East Palo Alto.

SUMMARY:
Verdict/Judgment: Plaintiff
Verdict/Judgment Amount: $2,340,700

Range: $2,000,000-4,999,999

 $131,700 past economic loss; $87,000 future economic loss; $100,000 past non-economic loss; $22,000 future non-economic loss; $2,000,000 punitive damages; plus $1,059,351 attorney fees against defendant Bimbo Bakeries USA for wrongful termination, failure to prevent discrimination, and failure to accommodate. The jury did not find in favor of plaintiff on her retaliation claim. The court awarded "lodestar" fees in the amount of $706,234, but found that a multiplier of 1.5 was warranted in the case. The court granted defendants Torrise, Thompson-McCann, and Perez's motion for summary judgment and dismissed plaintiff's claims against them.
Trial Type: Jury
Trial Length: Not reported.
Deliberations: Not reported.
Jury Poll: Not reported.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 2
Page 47

EXPERTS:
Plaintiff: Not reported.
Defendant: Not reported.

TEXT:
CASE INFORMATION
FACTS/CONTENTIONS

According to Plaintiff: Plaintiff Yaire Lopez was employed by defendant Bimbo Bakeries USA Inc. for five years. For the first two years, plaintiff worked as a clerk. For the next three years, plaintiff worked as a delivery driver, loading and unloading the truck and making deliveries. Plaintiff's salary was $520 per week, plus overtime and commissions. Plaintiff reported to defendant John Perez.

On February 4, 2005, plaintiff told defendant Perez that she was two months pregnant and gave him a doctor's release stating that she had certain restrictions, including the inability to lift more than 20 pounds and the inability to climb. The doctor's release also stated that plaintiff would need a 15-20 minute break every two hours.

Plaintiff alleged that one hour after plaintiff gave defendant Perez the release, defendant Perez told her to go home because defendant Bimbo Bakeries USA could not provide any work to the complainant with those restrictions. Plaintiff said defendant Bimbo Bakeries USA had previously made accommodations for other truck drivers with disabilities.

Plaintiff claimed that she received a medical leave packet from defendant Bimbo Bakeries USA and took the packet to her doctor, who advised her to file for unemployment insurance with the understanding plaintiff had been terminated. Plaintiff called defendant Laura Thompson-McCann to request a position at defendant Bimbo Bakeries USA's thrift store, but said defendant Thompson-McCann never returned her calls. She said defendant Bimbo Bakeries USA sent her a letter stating that she was on medical leave and would be terminated if she did not respond within 48 hours. Plaintiff said she left a message on defendant Thompson-McCann's voice-mail, but never received a return phone call. On May 23, 2005, plaintiff learned defendant Bimbo Bakeries USA terminated her on April 4, 2005.

Plaintiff alleged termination because of pregnancy, failure to accommodate conditions related to pregnancy, gender harassment, retaliation, unlawful denial of leave pursuant to the California Family Rights Act, failure to prevent discrimination, wrongful termination, and intentional infliction of emotional distress.

CLAIMED INJURIES
According to Plaintiff: Emotional distress.

CLAIMED DAMAGES
According to Plaintiff: Not reported.

SETTLEMENT DISCUSSIONS
According to Plaintiff: Not reported.

COMMENTS
According to Plaintiff: The complaint was filed on September 22, 2005.
E. Joseph Connaughton and Melissa Listug Klick represented defendants Bimbo Bakeries USA at trial and represented defendants Torrise, Thompson-McCann, and Perez until they were dismissed from the case. Wendy M. Lazerson represented defendant Bimbo Bakeries USA.

Trials Digest, A Thomson/West business

San Francisco County Superior Court

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 2
Page 48

.6 Trials Digest 9th 13

6 Trials Digest 9th 13 (Cal.Superior), 2006 WL 397031
For Opinion See 2006 WL 6080930 (Trial Order), 2006 WL 6080931 (Trial Order)

Copyright (c) 2011 Thomson Reuters/West

Superior Court, Santa Barbara County, California.

Wysinger vs. Automobile Club of Southern California

TOPIC:
Synopsis: District manager claims age and disability discrimination by employer
Case Type: Labor & Employment; Discrimination; Labor & Employment; Disability/Medical Condition; Labor & Employment; Harassment; Labor & Employment; Retaliation; Intentional Torts; Infliction of Emotional Distress

DOCKET NUMBER: 1132996

STATE: California
COUNTY: Santa Barbara

Verdict/Judgment Date: January 6, 2006

JUDGE: Denise deBellefeuille

ATTORNEYS:
Plaintiff: Virginia Keeny, Hadsell & Stormer, Pasadena.; Dan Stormer, Hadsell & Stormer, Pasadena.
Defendant: Jeffrey Dinkin, Sheppard, Mullin, Santa Barbara.; Deborah Martin, Sheppard Mullin, Santa Barbara.

SUMMARY:
Verdict/Judgment: Plaintiff
Verdict/Judgment Amount: $1,284,000

Range: $1,000,000-$1,999,999

 By a vote of 10 to 2 the jury awarded plaintiff $284,000 in compensatory damages for the causes of action for retaliation and failure to engage in the interactive process, (having returned a special verdict of no liability on the causes of action for age discrimination, disability discrimination, and failure to accommodate), and by a vote of 9 to 3 the jury awarded plaintiff $1 million in punitive damages.
Trial Type: Jury
Trial Length: 1 month.
Deliberations: 3 days.
Jury Poll: Mixed poll.

EXPERTS:
Plaintiff: Alan Karbelnig Ph.D., psychologist, South Pasadena, (626) 441-7778.; Stephanie Rizzardi-Pearson, economist, Rizzardi-Pearson Associates, San Marino, (626) 457-6297.; David Wallace M.D., rheumatologist.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 2
Page 49

**Defendant:** <u>David N. Glaser</u> M.D., forensic psychiatrist, Glaser Forensic Group, Encino, (818) 382-9920.; <u>Orrin Troum</u> M.D., rheumatologist, Santa Monica, (310) 449-1999.

TEXT:
CASE INFORMATION
FACTS/CONTENTIONS

According to Plaintiff: Plaintiff Guy Wysinger, a 41-year district manager of defendant Automobile Club of Southern California ('ACSC'), sought a transfer to an office closer to his home due to his medical condition (rheumatoid arthritis, lupus, etc.). Plaintiff claimed that the long commute exacerbated his physical condition.
Plaintiff claimed that ACSC failed to provide him with required accommodation and that the failure to place him in the Ventura position constituted discrimination based on his age and disability, and retaliation based on plaintiff's having previously filed an age discrimination claim with the EEOC.
ACSC denied the transfer request, contending that the position he sought was, in fact, a promotion rather than a transfer, and that plaintiff was not the best qualified candidate for that position. Defendant denied plaintiff's claims, contending that it had legitimate, non-discriminatory reasons for its actions. Plaintiff also sued for breach of the covenant of good faith and fair dealing based on an alleged promise to move him to the Ventura office, harassment based on his age and/or disability, failure to provide a workplace free of harassment and discrimination, and intentional infliction of emotional distress, causes of action which were dropped after the presentation of evidence but prior to instructing the jury. While plaintiff had not pled a cause of action for failure to engage in the interactive process required by the Fair Employment and Housing Act, an amendment to add the claim was allowed after the presentation of evidence.

CLAIMED INJURIES
According to Plaintiff: Emotional distress.

CLAIMED DAMAGES
According to Plaintiff: Plaintiff claimed over $400,000 in lost wages and benefits, plus additional damages for emotional distress.

SETTLEMENT DISCUSSIONS
According to Plaintiff: No significant discussions.

COMMENTS
According to Plaintiff: Plaintiff will be making a motion for fees and costs. Motions for judgment notwithstanding the verdict and new trial are anticipated by defendant. An appeal is likely.

Trials Digest, A Thomson/West business

Santa Barbara County Superior Court/Central

6 Trials Digest 9th 13 (Cal.Superior), 2006 WL 397031

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 2
Page 50

**PROOF OF SERVICE**
*Mary Allen v. EMD Serono, et al.*
Case No. 30-2011 00470623

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Orange in the office of a member of the bar of this court at whose direction the service was made. My business address is Park Tower, Suite 1500, 695 Town Center Drive, Costa Mesa, CA 92626.

On June 9, 2011, I served the following document(s):

**DEFENDANT EMD SERONO, INC.'S PETITION AND NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332 AND 1441(b)**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as stated on the attached service list.

☒ **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **BY OVERNIGHT DELIVERY:** I placed the sealed envelope(s) or package(s) designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Ogletree, Deakins, Nash, Smoak & Stewart P.C., Costa Mesa, California. I am readily familiar with Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery.

☐ **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ **(Federal)** I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on June 9, 2011 at Costa Mesa, CA.

Rebecca L. Espinosa
Type or Print Name

*Rebecca L. Espinosa*
Signature

1

1

## <u>SERVICE LIST</u>

2

3    Matthew Girardi, Esq.                    Attorneys for Plaintiff MARY ALLEN
     Girardi Firm, L.L.P.
4    1600 Rosecrans Avenue
     4th Floor Media Center
5    Manhattan Beach, California 90266
6    Tel:   (310) 321-7656
     Fax:   (310) 321-7657
7

8
     10427449.1 (OGLETREE)
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Robert N. Block.

The case number on all documents filed with the Court should read as follows:

### SACV11- 861 JVS (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.


All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)         NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| MARY ALLEN | EMD SERONO, INC.; BRIAN MILLER; TIMOTHY BARR |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Matthew Girardi, CA Bar No. 239007 - GIRARDI FIRM, L.L.P. 1600 Rosecrans Avenue, 4th Floor Media Center Manhattan Beach, CA 90266   (310) 321-7656 | Allison C. Eckstrom, CA Bar No. 217255 OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. 695 Town Center Drive, Suite 1500 Costa Mesa, CA 92626   (714) 800-7900 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Sections 1332 and 1441

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 630 Liquor Laws | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**   Case Number:   **SACV 11-00861 JVS (RNBx)**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                                   CIVIL COVER SHEET                                   Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
  ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Fresno County |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County - Timothy Barr | Massachusetts - EMD Serono, Inc.<br>Connecticut - Brian Miller |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
  **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Fresno County<br>Massachusetts |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date June 9, 2011

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |